577 P.2d 1112 (1978)
In the Matter of the ESTATE of Joseph J. DANDREA, Deceased.
Eira DANDREA, Petitioner-Appellee,
v.
Blakemore McCARTY, Personal Representative of the Estate of Joseph J. Dandrea, Deceased, Respondent-Appellant.
Nos. 78-069, 77-748.
Colorado Court of Appeals, Division I.
April 13, 1978.
J. Kent Stauffer, Colorado Springs, for petitioner-appellee.
*1113 Ernest O. Tullis, Colorado Springs, for respondent-appellant.
VanCISE, Judge.
In Case No. 78-069, Blakemore McCarty, the personal representative of the estate of Joseph J. Dandrea, deceased, appeals a December 1977 order extending the family allowance to the widow for a second year and directing him to file annual and final accountings and to furnish the widow's attorney with copies of all returns and reports filed with governmental agencies. We affirm the extension of the allowance, and dismiss the appeal from the other provisions of the order.
In Case No. 77-748, the widow appeals a May 1977 order denying her earlier petition for supervised administration. We dismiss this appeal.
Joseph J. Dandrea died testate October 4, 1976, leaving one-half of his estate to his widow and sole heir, the appellee Eira Dandrea, one-sixth each to two nephews, and one-sixth in trust for a minor grandnephew. McCarty was named in the will as trustee for the minor's trust and was named and appointed as personal representative of the estate. Informal probate and appointment proceedings commenced on October 20.
The estate consisted almost entirely of commercial rental property appraised at about $320,000, earning a gross monthly income in excess of $1500, with most of the taxes and expenses paid by the tenants. Decedent had no insurance, there were no inter vivos trusts, and the only jointly held property was the family home which the widow sold two months after decedent's death.
Family allowance in the amount of $500 per month was paid to the widow for one year commencing in November 1976. The widow timely filed her request for the $7500 exempt property allowance, and this was paid in October 1977.
Six months after informal proceedings were commenced, the widow petitioned for formal probate of the will and for supervised administration, pursuant to § 15-12-401, et seq. and § 15-12-501 et seq., C.R.S. 1973, and C.R. Probate P. 30. The will was admitted to formal probate without objection. The personal representative objected to supervised administration. No evidence was presented in support of that portion of the petition, and therefore, in May 1977, it was denied, with the right reserved in the court to reconsider or in the widow to bring the matter to the court's attention later.
The order denying supervised administration was appealed to this court (Case No. 77-748). However, before any briefs were filed, further proceedings on the appeal were stayed because of the scheduled hearing before the trial court on the petition referred to below.
After the final monthly payment on the family allowance was made, the widow petitioned for the allowance to be continued until the estate is closed, and, in addition, asked for the administration of the estate to be supervised so that annual accountings would be filed and the estate be closed formally. In December 1977, after an evidentiary hearing, the court extended the family allowance for one year at $400 per month commencing forthwith. Also, it ordered a limited supervision consisting of annual accountings, a final accounting, and furnishing the widow's counsel with copies of any tax returns or reports filed with any federal or state governmental agency. The personal representative appeals this order (Case No. 78-069).

I
In opposing the extension of the allowance at $400 per month for an additional year, the personal representative claims that need on the part of the widow must be shown. To show lack of need, he points to the facts that two months after her husband's death the widow sold the jointly owned family home (not a part of the probate estate) and netted $17,100 therefrom, that for the first year she received $500 per month family allowance, and that in mid-October 1977 she received her $7500 exempt property allowance. However, during that same period she paid $14,000 down on another *1114 house (priced at $25,000) and, with most of the exempt property allowance, paid off a second mortgage. Except for her car, she had nothing other than what she had received as a result of her husband's death, and at the time of the hearing she had only about $1,000 of that remaining. Furthermore, she had no job and no income, had living expenses in excess of $600 a month, had never been employed, had been completely dependent on her husband for her support, was in her sixties, and had health and English language problems.
The applicable statutory provisions in pertinent part provide:
"[T]he surviving spouse . . . [is] entitled to a family allowance which shall be a reasonable allowance in money out of the estate for [her] maintenance during the period of administration, which allowance may not continue for longer than one year if the estate is inadequate to discharge allowed claims." Section 15-11-403, C.R.S. 1973 (1976 Cum.Supp.).
"[The personal representative] may determine the family allowance in a lump sum not exceeding six thousand dollars or periodic installments not exceeding five hundred dollars per month for one year and may disburse funds of the estate in payment of the family allowance. The personal representative or any interested person aggrieved by any selection, determination, payment, proposed payment, or failure to act under this section may petition the court for appropriate relief, which relief may provide a family allowance larger or smaller than that which the personal representative determined or could have determined." Section 15-11-404, C.R.S. 1973 (1976 Cum.Supp.).
Since arrangements had been made or were pending for payment of estate and inheritance taxes on a long-term installment basis, and since there was no showing of any undischarged claims other than the family allowance applied for, it was apparent that there was sufficient net income in the estate to pay the amount ordered by the court without having to look to principal.
Factors to be considered in determining whether the allowance should have been extended and in what amount are set forth in I ALI-ABA, Uniform Probate Code Practice Manual, 110 (R. Wellman 2d ed.):
"The purpose of the family allowance is to provide for support of the family while the estate is undergoing administration. In determining the amount, particularly when a court order is required to approve an allowance in excess of $6,000, account should be taken of both the previous standard of living and the nature of other resources available to the family to meet current living expenses. If the surviving spouse has a substantial income, this should be taken into account. . . . In general the purpose of the allowance is to provide for a period of adjustment. Other assets available to the family may entirely eliminate the necessity for any family allowance. For instance, a husband may have created a living trust that would provide immediate income to the family after his death, so that there would be no disruption in the standard of living. If life insurance proceeds have been paid to the family in a lump sum, or are being paid in periodic installments, consideration can be given to whether the decedent intended these proceeds to be used for the period of adjustment or to be conserved as capital. If a husband has been the principal source of family support, the wife should not be expected to use her capital to support the family until his estate is available.
"How much allowance is necessary must be determined in the individual case on its facts. Need is always relative and what is reasonable has to be decided in the light of many factors."
We hold that the ultimate determination is a matter within the discretion of the trial court. Its order allowing $400 per month for an additional year, under the circumstances, was reasonable and was not an abuse of discretion.

II
The personal representative's main challenge to the December order for the *1115 accountings and the furnishing of the copies is that the trial court had no jurisdiction to consider the matter while the May order denying supervised administration was on appeal. We do not agree.
Assuming without deciding that the personal representative has standing to appeal the December limited supervision order, still the appeals of these supervision orders in both cases must be dismissed for lack of finality. C.A.R. 1(a)(1).
The Colorado Probate Code furnishes no guidance as to the type of probate court orders which may be deemed final for purposes of appeal. See § 15-10-308, C.R.S. 1973. Hence, we must assume that the General Assembly when it enacted the Code intended previous decisional law on the subject of appeals to continue to apply. See Smith v. Miller, 153 Colo. 35, 384 P.2d 738 (1963).
A review of those cases establishes that the supervision orders at issue here are not final for purposes of review. See O'Neill v. Irwin, 160 Colo. 99, 414 P.2d 122 (1966) (order denying petition for removal of executor held not a final judgment); Peters v. Peters, 82 Colo. 503, 261 P. 874 (1927) (refusal to revoke letters not a final judgment); Ryan v. Ryan, 78 Colo. 100, 239 P. 886 (1925) (approval of intermediate report not a final judgment); Goodknight v. Harper, 70 Colo. 41, 197 P. 237 (1921) (approval of preliminary report involving administrator's fees not appealable). C.A.R. 1(a)(1) limits appeals from the district or probate court to judgments which are final. As stated in Goodknight, "The evident purpose of the present [rule] is to preclude the review of matters in probate by piecemeal. . . ."
Since we hold that the supervision orders lacked finality for purposes of appeal, we need not consider whether the trial court abused its discretion in denying supervised administration in May and in granting limited supervision in December.
The order extending the allowance in Case No. 78-069 is affirmed. The appeals of the order granting limited supervision and the order denying supervised administration are dismissed.
RULAND and STERNBERG, JJ., concur.